John L. Smaha, Esq.  (Bar No. 95855)
John Paul Teague, Esq.  (Bar No. 254249)
SMAHA LAW GROUP
2398 San Diego Avenue
San Diego, CA  92110
(619) 688-1557
(619) 688-1558 (Facsimile)

Local Counsel for Plaintiff, De La Fuente Construction, Inc.

EMALFARB, SWAN & BAIN
440 Central Avenue
Highland Park, Illinois 60035
(847) 432-6900

Co-Counsel for Plaintiff, De La Fuente Construction, Inc.

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America for the use and benefit of De La Fuente Construction, Inc., | Case No.  **'16 CV 0368 BTM DHB** |
| Plaintiff, | **COMPLAINT FOR RECOVERY UNDER MILLER ACT AND OTHER RELIEF** |
| v. | |
| K.O.O. Construction, Inc.; and Travelers Casualty and Surety Company of America, | |
| Defendants | |

NOW COMES the United States of America for the use and benefit of De La Fuente Construction, Inc., (hereinafter "Plaintiff"), and complaining against the Defendants, K.O.O. Construction, Inc. and Travelers Casualty and Surety Company of America, states as follows:

## JURISDICTION

1.    This Court has subject matter jurisdiction pursuant to the 28 U.S.C. § 1331 and the provisions of the Miller Act, 40 U.S.C. § 3133(b)(3)(B). The Court has pendent jurisdiction and supplemental jurisdiction over the State law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

## VENUE

2.    The contract at issue was to be performed and executed in San Diego County. Venue therefore lies in the United States District Court for the Southern District of California pursuant to 40 U.S.C. § 3133(b) and 28 U.S.C. § 1391(b)(2).

## PARTIES

3.    Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business in National City, CA. Plaintiff is a concrete contractor.

4.    Defendant, K.O.O. Construction Inc., ("KOO") is a California corporation, organized and existing under the laws of the State of California, with its principal place of business in Sacramento, California, being known as a prime contractor.

5.    Defendant, Travelers and Surety Company of America, ("Surety), is a company authorized to issue payment and performance bonds for Federal Government construction project and has its principal office in Hartford, Connecticut.

## STATEMENT OF FACTS

6.    In or about September 17, 2012, Defendant, KOO, contracted with The Naval Facilities Engineering Command Southwest ("NAVFAC SW"), on the federal construction project known as contract #N62473-09-D-1655 or the Child Development Center at Murphy Canyon Naval Base ("Project"). The contract between KOO and NAVFAC SW is herein referred to as the "Prime Contract".

7.    On September 28, 2012, KOO obtained a Miller Act Payment Bond (hereinafter the "Bond") pursuant to 40 U.S.C. 270(a) from Defendant, Surety, in the amount of $5,598,531.00 as required by the NAVFAC SW. In the Bond, Surety agreed to bound "jointly and severally with" KOO to make payment required by 40 U.S.C. 270(a) to all persons having a direct contractual relationship with KOO or to any subcontractor of KOO who furnished labor, material or both in the prosecution of the work provided for in the Prime Contract, in the event that KOO failed to make prompt payment to such persons. A copy of the Payment Bond is attached hereto as Exhibit "A".

2

COMPLAINT FOR RECOVERY UNDER MILLER ACT AND OTHER RELIEF

8.      On or about December 12, 2013, KOO contracted with Plaintiff, De La Fuente Construction to furnish all labor, materials, equipment, and appurtenances necessary and required to complete the phased and functional building and site concrete and masonry work for the Project as required by the Prime Contract and specifications.  A copy of the Subcontract in the sum of $353,000.00 is attached hereto as Exhibit "B-1".  In addition, the parties entered into change orders, per Exhibit "B-2" – totaling $41,084.00.

9.      The adjusted contract price increased to $394,084.00, of which KOO has paid $346,190.60, leaving a balance due of $47,893.40.

10.     Plaintiff had completed its work on or about February 27, 2015, all of which work was furnished in the prosecution of the work provided for in the Prime Contract and specifications.

11.     KOO then failed to pay Plaintiff the principal sum of $47,893.40 due under the subcontract within 30 days of Plaintiff's invoices attached as Exhibit C.

12.     Plaintiff then submitted a claim for payment to Surety under the Payment Bond, but Surety failed to pay Plaintiff the amount due. On the date of this action, Plaintiff then filed its original complaint for recovery under the Miller Act within one year of Plaintiff's last date of completion of work under the contract.

13.     As of January 19, 2016, Plaintiff is owed the sum of $47,893.40 plus interest for concrete and masonry work performed under its subcontract with KOO for the Project.

## COUNT I

### (BREACH OF CONTRACT)

14.     Plaintiff repeats and re-alleges paragraph 1 through 13 above as though fully set forth in this claim.

15.     Plaintiff has performed all of its obligations under the Subcontract.

16.     KOO has breached the Subcontract in that it has failed and refused to pay Plaintiff in full for labor, services and materials furnished in the prosecution of the work provided for in the Prime Contract and pursuant to the Subcontract and applicable change orders.

17.    Plaintiff has suffered damages as a direct and proximate result of KOO's breach of contract.

18.    Plaintiff is entitled to interest in accordance with the parties' agreement or by conduct and/or under California Civil Code 3287(b) at a rate of 10% per annum after breach of contract as set forth in Code 3289(b) on all monies due to the Plaintiff.

WHEREFORE for the foregoing reason the Plaintiff, De La Fuente Construction Inc., prays that this Court enter judgment in its favor and against K.O.O. Construction, Inc., in the amount of $47,893.40 plus interest, cost of suit, reasonable attorney's fees and interest thereon.

### COUNT II

(MILLER ACT PAYMENT BOND)

19.    Plaintiff repeats and re-alleges paragraph 1 through 18 above as though fully set forth in this claim.

20.    Plaintiff furnish its labor and material as directed by KOO in the prosecution of his work as provided for in such contract and change orders that followed in respect of which a payment bond was furnished by the Surety under sections 270(a) to 270(d–1) of this title.

21.    As of January 19, 2016, the Plaintiff has not been paid in full, and therefore, before the expiration of a period of ninety days after February 27, 2015, the day upon which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, the Plaintiff shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him.

21. Surety is obligated, pursuant to their Bond to pay Plaintiff the balance due pursuant to 40 U.S.C. 270(b) for the labor, materials and services it furnished in the prosecution of the work provided for it the Prime Contract, and for which KOO failed to make payment.

21.    Surety has failed to fulfill its obligation under the Bond to pay Plaintiff for labor, materials and services furnished in the prosecution of the work provided for in the Prime Contract, and for which KOO failed to make payment.

COMPLAINT FOR RECOVERY UNDER MILLER ACT AND OTHER RELIEF

22.    Plaintiff is entitled to payment from Surety pursuant to Miller Act, 40 U.S.C. § 3133 and 40 U.S.C. 270(b).

23.    Plaintiff is entitled to interest pursuant to its contract as the parties agree.

WHEREFORE for the foregoing reason the Plaintiff, De La Fuente Construction Inc., prays that this Court enter judgment in its favor and against Travelers Casualty and Surety Company of America, in the amount of $47,893.40 plus interest, cost of suit, reasonable attorney's fees and interest thereon.

## COUNT III

### (PROMPT PAYMENT ACT)

24.    Plaintiff repeats the allegations of paragraphs 1 through 23 as though fully set forth in this claim.

25.    Plaintiff, as a subcontractor to the Prime Contractor (KOO), is entitled under the Prompt Payment Act, 31 U.S. Code §3905, to be paid in full within seven days of the Prime Contractor's receipt of payment from the government.

26.    To the extent KOO has received payment from the government; the Plaintiff has not been paid in full within the statutory time period.

27.    $47,893.40 has been wrongfully withheld from Plaintiff.

28.    Plaintiff is entitled to interest under 31 U.S. Code §3902 of the Prompt Payment Act.

29.    The interest is to be computed for the period beginning on the day after the required payment was due and ending on the date on which payment is made.

30.    The interest rate shall be computed at the rate of interest established by the Secretary of the Treasury, and published in the Federal Register, for interest payments under section 7109(a)(1) and (b) of title 41.

///

//

///

///

COMPLAINT FOR RECOVERY UNDER MILLER ACT AND OTHER RELIEF

WHEREFORE for the foregoing reason the Plaintiff, De La Fuente Construction, prays that this Court enter judgment in its favor and against KOO and Travelers Casualty and Surety Company of America, in the amount of $47,893.40 plus interest, cost of suit, reasonable attorney's fees and interest thereon.

Dated: February 11, 2016

/s/ John L. Smaha
John L. Smaha, Esq.
John Paul Teague, Esq.
Attorneys for the Plaintiff
De La Fuente Construction, Inc.

W:\Emalfarb, Hal\Finalized Complaint (00102279x920AE).doc

COMPLAINT FOR RECOVERY UNDER MILLER ACT AND OTHER RELIEF

Exhibit A

Bond #105797406

| PERFORMANCE BOND<br>(See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract)<br>10/25/12 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, D.C. 20405

**PRINCIPAL** (Legal name and business address)

K.O.O. Construction, Inc.
2510 Boatman Avenue
West Sacramento, CA 95691

**TYPE OF ORGANIZATION ("X" one)**

☐ INDIVIDUAL     ☐ PARTNERSHIP
☐ JOINT VENTURE     ☒ CORPORATION

STATE OF INCORPORATION
California

**SURETY(IES)** (Name(s) and business address(es))

Travelers Casualty and Surety Company of America
One Tower Square
Hartford, CT  06183-6014

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 005 | 598 | 531 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 9/28/12 | N62473-09-D-1655<br>Task Order #0004 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The Principal has entered into the contract identified above.

**THEREFORE:**

The above obligation is void if the Principal --

(a)(1)  Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.

(b)  Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in carrying out the construction contract with respect to which this bond is furnished.

**WITNESS:**

The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1.                          (Seal) | 2.                          (Seal) | 3.                          (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Keith Odister President/CEO | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | | |
|---|---|---|---|
| SIGNATURE(S) | 1.                          (Seal) | 2.                          (Seal) | |
| NAME(S) (Typed) | 1. | 2. | (Seal) |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| BURETY A | NAME & ADDRESS | Travelers Casualty and Surety Company of America One Tower Square, Hartford, CT  06183-6014 | STATE OF INC. CT | LIABILITY LIMIT $129,065,000.00 |
| | SIGNATURE(S) | 1. Erin Johnson | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | 1. Erin Johnson Attorney-in-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition not usable

STANDARD FORM 25 (REV. 5-86)
Prescribed by GSA-FAR (48 CFR) 53.228(b)

Bond #105797406

| PAYMENT BOND (See Instructions on reverse) | DATE BOND EXECUTED *(Must be same or later than date of contract)* 10/25/12 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL *(Legal name and business address)* | TYPE OF ORGANIZATION *("X" one)* | | |
|---|---|---|---|
| K.O.O. Construction, Inc. 2510 Boatman Avenue West Sacramento, CA 95691 | ☐ INDIVIDUAL ☐ JOINT VENTURE | ☐ PARTNERSHIP ☒ CORPORATION | |

| STATE OF INCORPORATION California |
|---|

| SURETY(IES) *(Name(s) and business address(es))* | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| Travelers Casualty and Surety Company of America One Tower Square Hartford, CT 06183-6014 | 005 | 598 | 531 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 09/28/12 | N62473-09-D-1655 Task Order #0004 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| | PRINCIPAL | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | 1. Keith Odister President/CEO | 2. | 3. | |

| | INDIVIDUAL SURETY(IES) | | |
|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | (Seal) |
| NAME(S) *(Typed)* | 1. | 2. | |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Travelers Casualty and Surety Company of America One Tower Square, Hartford, CT 06183-6014 | STATE OF INC. CT | LIABILITY LIMIT $ 129,065,000.00 | Corporate Seal |
| | SIGNATURE(S) | 1. *(signature)* | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. Erin Johnson Attorney-in-Fact | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA —FAR (48 CFR) 53.2228(c)

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of Sacramento _____ }

On 10/25/13 _____ before me, Sandra R. Black, Notary Public _____,
Date                                     Here Insert Name and Title of the Officer

personally appeared Erin Johnson _____
                                     Name(s) of Signer(s)

_____,

who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of
the State of California that the foregoing paragraph is true
and correct.

Witness my hand and official seal.

Signature _____
                    Signature of Notary Public

[Notary Seal: SANDRA R. BLACK, COMM. #1982921, NOTARY PUBLIC • CALIFORNIA, SACRAMENTO COUNTY, Comm. Exp. JUNE 22, 2016]

Place Notary Seal Above

━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: Erin Johnson _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner —— ☐ Limited ☐ General
☑ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing:
Travelers Casualty and Surety
Company of America
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner —— ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing:
_____
_____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# POWER OF ATTORNEY


**TRAVELERS**

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.        225200

Certificate No.  **004916016**

**KNOW ALL MEN BY THESE PRESENTS:** That St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, that Farmington Casualty Company, Travelers Casualty and Surety Company, and Travelers Casualty and Surety Company of America are corporations duly organized under the laws of the State of Connecticut, that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Sharon J. Rusconi, Sandra R. Black, and Erin Johnson

of the City of _____Sacramento_____ , State of_____California_____ , their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____12th_____ day of _____June_____ , 2012 .

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
George W. Thompson, Senior Vice President

On this the _____12th_____ day of _____June_____ , 2012 , before me personally appeared George W. Thompson, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2016.

_____
Marie C. Tetreault, Notary Public

58440-6-11 Printed in U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

Exhibit B-1



Signed Contract Back:      Y   N
Insurance Cert Back:       Y   N
Signed Schedule of Values: Y   N
Signed Standard Form 1413: Y   N
Completed W-9 Form:        Y   N

## K.O.O. CONSTRUCTION INC
## SUBCONTRACT AGREEMENT

WITNESSETH:

DESCRIPTION OF CONSTRUCTION PROJECT: Subcontractor agrees to furnish all necessary design, submittals, closeout documentation, labor, materials, tools, equipment and supplies necessary to perform, and to perform all work set forth in "Section 2" hereof in the construction of:

Contract Number N62473-09-D-1655 TO#0004
Child Development Center
Murphy Canyon Naval Base San Diego

in accordance with the Terms and provisions of the Contract between Owner and Contractor, dated September 17, 2012, including the General and Special Conditions Drawings and Specifications and other Documents forming or by reference made a part of said Contract hereinafter called the General Contract, all of which shall be considered part of this Subcontract by reference hereto, and Subcontractor agrees to be bound to Contractor and Owner by the terms and provisions thereof.

This Agreement is made at ___West Sacramento, CA___ this __12ᵗʰ__ day of December 2013, between:

CONTRACTOR

  Name ___K.O.O. CONSTRUCTION INC___

  Address __2510 Boatman Avenue, Suite B__

  City ___West Sacramento___  State __CA__  Zip ___95691-3816___

  Phone ___(916) 371-3388___  Fax ___(916) 371-1188___

and

SUBCONTRACTOR

  Name ___DLF Construction, Inc.___

  Address __121 East 31ˢᵗ St. Suite C__

  City _National City_  State _Ca_  Zip _91950_

  Phone _619-512-5505_  Fax _619-878-2980_

On or about the 12ᵗʰ day of December 2013, Contractor entered into a prime contract to perform the following work:

## SECTION I. ENTIRE CONTRACT

  The phrase "Contract Documents" is defined to mean and include:

2

The plans, consisting of all bid set Sheets, Specifications, Special and General Conditions, Addenda and Illustrative Details, this subcontract, the Contract with the General Contractor, and the General Contractor's Prime Contract with the Owner and any attachments included within.

a) The terms "Contract" and "Prime Contract" may be used herein refer to the Contract between the Owner and Contractor for construction of the Project.

b) The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, together with all Drawings, Specifications, General Conditions, Supplemental General Conditions, Special Conditions, Addenda, Amendments and all other instruments issued by or on behalf of the Owner and / or prepared by the Architect for the Project, together with all other documents or instruments referred to in the aforesaid "Contract" and "Contract Documents".

c) The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments, or addenda, including without limitation all of the General Terms incorporated herewith and referred to herein.

d) The term "Subcontract Documents" as used herein refers to the "Contract", "Contract Documents" and "Subcontract".

e) In the event of a conflict between any of the Subcontract Documents, the documents shall take precedence in the following order and the one taking precedence controls the one(s) following:

   i) The Contract, together with all Change Orders, modifications and exhibits;
   ii) The Contract Documents in the order listed in the Contract;
   iii) The Subcontract, together with all Change Orders and exhibits, provided, however, the Subcontract shall control when the provisions of the Subcontract require stricter performance by the Subcontractor.

f) Subcontractor specifically agrees to perform in accordance with the provisions of the "Contract Documents"; provided, however, nothing in the Contract Documents shall be construed to limit any and all actual damages that may be incurred by Contractor and recovered by Contractor from Subcontractor as a result of any default by Subcontractor. Subcontractor agrees that he has read the "Contract Documents" and copies were made available for Subcontractor and Subcontractor agrees and acknowledges that he shall similarly make copies of such documents available to his Sub-Subcontractors, if any, and that all such Sub-Subcontractors will agree to be bound by the Contract Documents and Subcontract Documents.

g) The following clauses are incorporated by reference into this subcontract agreement.

   - Far Clause 52.228-5 Insurance-work on Government installation
   - Far Clause 52.203-6 Restrictions on subcontractor sales to the Government
   - Far Clause 52.222.23 Equal Employment Opportunity for construction
   - Far Clause 52.222-21 Prohibition of Segregated Facilities
   - Far Clause 52.222-35 Equal Opportunity for special disabled veterans
   - Far Clause 52.223-14 Toxic chemical release reporting
   - Far Clause 52.225-11 Buy American Act – Construction materials
   - Far Clause 52.225-15 Restrictions on certain foreign purchases
   - Far Clause 52.227-1 Authorization and consent
   - Far Clause 52.222-4 Contract work hours and Safety Standards Act – Overtime Compensation – Construction
   - Payrolls and Basic Records
   - Withholding of Funds
   - Disputes Concerning Labor Standards
   - Davis-Bacon Act
   - Apprentices and Trainees
   - Compliance with Copeland Regulations
   - Far Clause 52.244-2 Subcontracts
   - Contract Termination – Debarment
   - Certification of Eligibility
   - Far Clause 52.232.27 Prompt Payment For Construction Contracts

Subcontractor certifies that he is fully familiar with all of the terms of the Contract Documents, the location of the jobsite, and the conditions under which the work is to be performed and that he enters into this Agreement based upon his investigation of all such matters and is not relying on any opinions or representations of Contractor. This Agreement represents the entire agreement. The Contract Documents are incorporated in this Agreement by reference, and Subcontractor and his subcontractors will be and are bound by the Contract Documents insofar as they relate in any way, directly or indirectly, to the work covered by this Agreement.

3

Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Contract Documents reference is made to Contractor, and the work or specifications therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor.

## SECTION 2. SCOPE OF SUBCONTRACTOR'S WORK

- Provide all submittals, labor, material, equipment, incidental items, other facilities and appurtenances necessary and required to complete the phased and functional building and site concrete and masonry work, including all reinforcing, according to the project documents including the NAVFAC Final RFP Documents dated April 2012 (Part 1 to Part 6), Amendments 1-7, Dean Unger Plans and specifications dated November 11, 2013

- DFL Inc Proposal Dated December 5, 2013 attached as reference, subordinate to this contract document.

- Referenced Drawings listed in Drawing Index Sheet G-000

<u>Furnished and Installed Items Included in this subcontract including but not necessarily limited to:</u>

    1.   Divisions; 033000, 033500, 042000, 079200, 321613,
    2.   Assure all work is coordinated with supporting trades necessary for a complete and final installation.

<u>Furnished and Installed Items per all applicable division specifications</u>

1.   Building Concrete
        a.   Foundations and footings
        b.   Slabs on grade
        c.   Base rock under slabs on grade
        d.   15 mill vapor barrier
        e.   Footing excavation – (stockpile spoils on-site)
        f.   Layout and setting bolt templates – (Bolts provided by others)
        g.   Reinforcing steel labor and material
        h.   Grouting base plates
        i.   Concrete
        j.   Placing and finishing
        k.   Stripping forms, clean-up
        l.   Specified cure

2.   On Site Concrete
        m.   Sidewalks
        n.   Colored concrete
        o.   Vertical curbs
        p.   Concrete paving
        q.   HCP ramps
        r.   Truncated domes
        s.   CMU
        t.   Trash Enclosure
        u.   Reinforcing steel labor and material
        v.   Joint sealant
        w.   Thickened edges, turndowns and footings as required for the proper execution of this scope of work.
        x.   Concrete
        y.   Placing and finishing
        z.   Specified cure

<u>Excluded Items:</u>
Bonds, root barrier, galvanized steel header, cobble mulch, decomposed granite, bollards, anchor bolts, anchor bolt templates, embeds, post and gates, miscellaneous metals, off haul of spoils.

<u>Qualifications:</u>
Labor to install bollards, anchor bolts and anchor bolt templates is included, material furnished by KOO.

4

**Important** Insurance Certificates in the amount required are necessary before the subcontractor can begin his work on site. This is a certified payroll job. All certified labor reports shall be in our possession and based on the most recent rules and laws as defined by the Federal Department of labor and Fair Clause prior to any payment by Contractor. The terms and conditions of this Subcontract supersede any terms, conditions or notations in Subcontractor's bid or proposal unless specifically repeated on our "Supplemental Subcontract Form". Similarly, the terms and conditions of this subcontract supersede any oral and written terms of understanding unless specifically repeated.

For the project in accordance with the Contract Documents and as more particularly specified in:

See Section 1. Entire Contract, Above

In the event of any dispute between Contractor and Subcontractor over the scope of Subcontractor's work under the Contract Documents, Subcontractor will not stop work but will prosecute the work diligently to completion, the dispute to be submitted for resolution in accordance with Section 18 below.

**SECTION 3. CONTRACT PRICE**

Contractor agrees to pay Subcontractor for the strict performance of his work, the sum of (Three Hundred Fifty-Three Thousand Dollars & 00/100 ($353,000.00), subject to additions and deductions for changes in the work as may be directed in writing by Contractor, and to make payment in accordance with the Payment Schedule, Section 4.

**SECTION 4. PAYMENT SCHEDULE**

Contractor agrees to pay to Subcontractor in monthly progress payments of ____Ninety____ percent ( 90 %) of labor and materials which have been placed in position, with funds received by Contractor from Owner for work performed by Subcontractor as reflected in Contractor's applications for payment. Such monthly progress payments shall be made (7) days after receipt of payment from the Owner by Contractor. Final payment to Subcontractor shall be made ten (10) days after the entire work required by the prime contract has been fully completed in conformity with the Contract Documents and has been delivered to and accepted by Owner, Architect, and Contractor. The terms and received by Contractor from Owner in final payment for work under the prime contract. Subcontractor agrees to furnish, if and when required by Contractor, payroll affidavits, receipts, vouchers, releases of claims for labor, material, and from his subcontractors performing work or furnishing materials under this Agreement, all in form satisfactory to Contractor, and it is agreed that no payment hereunder shall be made, except at Contractor's option, until and unless such documents have been furnished. Contractor, at his option, may make any payment due hereunder by check made payable jointly to Subcontractor and any of his subcontractors, suppliers and material men who have performed work or furnished materials under this Agreement. Any payment made hereunder prior to completion and acceptance of the work, as referred to above, shall not be construed as evidence of acceptance or acknowledgment of completion of any part of any Subcontractor's work. All Payments will be paid based on your approved schedule of values approved on a monthly progress billing as approved by the general contractor. No payments will be made without the prior approval of the general contractor even if previous months conditionals have been sent to our office with a different approval than the owners.

**SECTION 5. TIME**

Time is of the essence of this Agreement. Subcontractor shall provide Contractor within 15 days of Letter of Intent/Contract Award scheduling information and a proposed schedule for performance of his work in a form acceptable to Contractor. Subcontractor shall conform to Contractor's progress schedule and all revisions or changes made thereto. Subcontractor shall prosecute his work in a prompt and diligent manner in accordance with Contractor's progress schedule without delaying or hindering Contractor's work or the work of other contractors or subcontractors. Subcontractor shall coordinate the work covered by this Agreement with that of all other contractors, subcontractors, and of the Contractor, in a manner that will facilitate the efficient completion of the entire work. In the event Subcontractor fails to maintain his part of the Contractor's schedule, he shall, without additional compensation, accelerate the work as Contractor may direct until Subcontractor's work is in accordance with such schedule. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time and order in which various portions of the work shall be installed and the relative priority of the work of Subcontractor and other subcontractors, and, in general, all other matters pertaining to the timely and orderly conduct of the work of Subcontractor on the premises. Should Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of Owner, Architect or Contractor, or should Subcontractor be delayed waiting for materials, if required by this Contract to be furnished by Owner or Contractor, or by damage caused by fire or other casualty for which Subcontractor is not responsible, or by the combined action of the workmen, in no way caused by or resulting from fault or collusion on the part of Subcontractor, or in the event of a lock-out by Contractor, then the time herein fixed for the completion of the work shall be extended the number of days that Subcontractor has thus been delayed, but no allowance or extension shall be made unless a claim therefore is presented in writing to Contractor within 48 hours of the commencement of such delay, and under no circumstances shall the time of completion be extended to a date which will prevent Contractor from completing the entire project within the time allowed Contractor by Owner for such completion.

No claims for additional compensation or damages for delays, whether caused in whole or in part by any conduct on the part of

5

Contractor, including, but not limited to, conduct amounting to a breach of this Agreement, or delays by other subcontractors or Owner, shall be recoverable from Contractor, and the above-mentioned extension of time for completion shall be the sole remedy of Subcontractor; provided, however, that in the event Contractor obtains additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances. In the event that Contractor prosecutes a claim against Owner for additional compensation for any delay, Subcontractor shall cooperate fully with Contractor in the prosecution thereof and shall pay costs and expenses incurred in connection therewith, including actual attorneys' fees, to the extent that said claim is made by Contractor at the request of Subcontractor.

Subcontractor shall prepare and obtain approval as required by the Contract Documents for all shop drawings, details, samples, and do all other things necessary and incidental to the prosecution of his work in conformance with Contractor's progress schedule.

## SECTION 6.  CHANGES IN THE WORK
Subcontractor shall make any and all changes in the work described in the Contract Documents and this Agreement as directed by the Contractor's Project Manager or Branch Manager in writing thru the use of a formal subcontract change order.  Such change or written direction shall not invalidate this Agreement.

If necessary, the contract price stated in Section 3 and the time for Subcontractor's performance shall be adjusted by appropriate additions or deductions mutually agreed upon before Subcontractor performs the changed work.  Subcontractor shall supply Contractor with all documentation necessary to substantiate the amount of the addition to or deduction from the price or time.  If Contractor and Subcontractor cannot agree on the amount of the addition or deletion, Subcontractor shall nonetheless timely perform the work as changed by Contractor's written direction.  Once Subcontractor receives Contractor's written direction, Subcontractor is solely responsible for timely performance of the work as changed by the written direction.  Changes are subject to the CHANGES Article or Section in the General or Special Conditions of the Specifications, Changes in the Work, and shall include no more than 5% total overhead and profit for changes by this subcontractor if the total overhead and profit is on a shared basis.

Payment for changed work shall be made in accordance with Section 4.

Subcontractor shall not make any changes in the work described in Section 2 or in any way cause or allow that work to deviate from the Contract Documents without written direction from Contractor.  If Subcontractor makes any changes in the work described in Section 2 without written direction from Contractor, such change constitutes an agreement by Subcontractor that he will not be paid for that changed work, even if he received verbal direction from Contractor or any form of direction, written or otherwise, from Owner or any other person or entity.  In addition, Subcontractor shall be liable for any and all losses, costs, expenses, damages, and liability of any nature whatsoever associated with or in any way arising out of any such change he makes without written direction from Contractor.

If a dispute arises between Contractor and Subcontractor about whether particular work is a change in the work described in Section 2, Subcontractor shall timely perform the disputed work and may give written notice of a claim for additional compensation for that work.  Such written notice of claim must be given within ten (10) days after such work is performed.  Subcontractor's failure to give written notice within the ten (10) days constitutes an agreement by him that he will not be paid for the disputed work.

No change, alteration, or modification to or deviation from this Agreement, the Contract Documents, prime contract, plans, or specifications, whether made in the manner provided in this provision or not, shall release or exonerate, in whole or in part, any bond or any surety on any bond given in connection with this Agreement, and no notice is required to be given to such surety of any such change, alteration, modification, or deviation.

## SECTION 7.  DAMAGES CAUSED BY DELAYS
If Subcontractor should default in performance of the work described in Section 2 or should otherwise commit any act which causes delay to the prime contract work, Subcontractor shall be liable for all losses, costs, expenses, liabilities and damages, including consequential damages and liquidated damages, sustained by Contractor, or for which Contractor may be liable to Owner or any other party because of Subcontractor's default.

If subcontractor fails to complete the work identified in Section 2 within the time specified in the contract schedule, the subcontractor shall pay liquidated damages to the contractor in the amount of 1/10 of 1% of the their contract for each calendar day of delay until the work is completed or accepted.

## SECTION 8.  BONDING OF SUBCONTRACTOR
Concurrently with the execution of this Agreement, Subcontractor shall, subcontract, execute a labor and material bond and performance bond, in an amount equal to one hundred percent (100%) of the Contract Price.  Said bonds shall be executed by a corporate surety

6

*K. D.D.*

acceptable to Contractor and shall be in a form satisfactory to Contractor. Contractors shall pay one time only the premium on said bonds unless otherwise provided herein or in the Contract Documents.

## SECTION 9.  LIENS

In case suit is brought on any claim or liens for labor performed or materials used on or furnished to the project, Subcontractor shall pay and satisfy any such lien or judgment as may be established by the decision of the court in said suit.  Subcontractor agrees within ten (10) days after written demand to cause the effect of any such suit or lien to be removed from the premises, and in the event Subcontractor shall fail so to do, Contractor is authorized to use whatever means in its discretion it may deem appropriate to cause said lien or suit to be removed or dismissed and the cost thereof, together with actual attorneys' fees, shall be immediately due and payable to Contractor by Subcontractor. Subcontractor may litigate any such lien or suit provided he causes the effect thereof to be removed, promptly in advance, from the premises, and shall further do such things as may be necessary to cause Owner not to withhold any monies due to Contractor from Owner by reason of such liens or suits.

It is understood and agreed that the full and faithful performance of this Agreement on the part of Subcontractor (including the payment of any obligations due from Subcontractor to Contractor, and any amounts due to labor or material men furnishing labor or material for said work) is a condition precedent to Subcontractor's right to receive payment for the work performed, and any monies paid by Contractor to Subcontractor under the terms of this Agreement shall be impressed with a trust in favor of labor and material men furnishing labor and material to Subcontractor on the work herein subcontracted.

Should this subcontractor ever place a Lien, Stop Notice or Miller Act Stop Notice against Contractor for any reason, Subcontractor shall take responsibility for all costs associated with this lien and all Contractors administration costs plus reasonable overhead and profit associated to remove lien from the project.

## SECTION 10.  PROVISIONS FOR INSPECTION

Subcontractor shall at all times furnish to Contractor and his representatives safe and ample facilities for inspecting materials at the site of construction, shops, factories or any place of business of Subcontractor and his subcontractors and material men where materials under this Agreement may be in course of preparation, process, manufacture or treatment.  Subcontractor shall furnish to Contractor as often as required by Contractor, full reports of the progress of the work at any place where material under this Agreement may be in the course of preparation or manufacture.  Such reports shall show the progress of such preparation and manufacture in such details as may be required by Contractor, including, but not limited to, any plans, drawings or diagrams in the course of preparation.

## SECTION 11.  MATERIALS AND WORK FURNISHED BY OTHERS

In the event the scope of work includes installation of materials or equipment furnished by others or work to be performed in areas to be constructed or prepared by others, it shall be the responsibility of Subcontractor to examine and accept, at the time of delivery or first access, the items so provided and thereupon handle, store and install the items with such skill and care as to insure a satisfactory completion of the work.  Use of such items or commencement of work by Subcontractor in such areas shall be deemed to constitute acceptance thereof by Subcontractor.  Loss or damage due to acts of Subcontractor shall be charged to the account of Subcontractor and deducted from monies otherwise due under this Agreement.

## SECTION 12.  PROTECTION OF WORK

Subcontractor shall effectually secure and protect the work done hereunder and assume full responsibility for the condition thereof until final acceptance by Architect, Owner and Contractor.  Subcontractor further agrees to provide such protection as is necessary to protect the work and the workmen of Contractor, Owner and other subcontractors from his operations.

Subcontractor shall be liable for any loss or damage to any work in place or to any equipment and materials on the jobsite caused by him or his agents, employees or guests.

## SECTION 13.  SUPERINTENDENCE OF WORK

Subcontractor shall supervise his work or appoint someone to supervise all on site work.  Supervision must be maintained 100% for the duration of subcontractors work.  Subcontractor shall provide the name and contact information of the superintendent upon start of work.

## SECTION 14.  LABOR RELATIONS

14.1    Subcontractor shall keep a representative at the jobsite during all times when Subcontractor's work is in progress, and such representative shall be authorized to represent Subcontractor as to all phases of the work.  Prior to commencement of the work, Subcontractor shall notify Contractor who Subcontractor's representative is to be, and in the event of any change of representative, Subcontractor shall notify

7

Contractor who the new representative is to be prior to such change becoming effective.

Subcontractor acknowledges that Contractor has entered into labor agreements covering work at his construction job sites with the labor unions listed in Section 26 below and incorporated herein by reference.

Subcontractor agrees to comply with all of the terms and conditions of those labor agreements including trust fund payment into the respective labor trust funds set forth in the respective labor agreements, referred to in Section 26 below insofar as Subcontractor may lawfully do so, and in particular agrees to comply with the terms and provisions of said agreements setting forth the jurisdiction and scope of work claimed by each of such crafts and the procedure contained therein for resolution of jurisdictional disputes.  In the absence of any such procedure, or if such procedure fails to promptly resolve the jurisdictional dispute, Subcontractor agrees, at his own cost and expense, upon request of Contractor, to take any and all lawful steps to secure a binding and final determination of said jurisdictional dispute by the National Labor Relations Board.

Subcontractor acknowledges that terms and conditions of the labor agreements with the unions listed herein below may require that Subcontractor comply with additional labor agreements with unions affiliated with the AFL-CIO but not listed.  When the terms and conditions of the below-referenced labor agreements so require, Subcontractor shall perform his jobsite work pursuant to all terms and conditions of an appropriate labor agreement with a union affiliated with the AFL-CIO.

Should there be picketing on Contractor's jobsite, and Contractor establishes a reserved gate for Subcontractor's purpose, it shall be the obligation of Subcontractor to continue the proper performance of his work without interruption or delay.

Subcontractor further promises and agrees that he will bind and require all of his subcontractors and their subcontractors performing jobsite work of the type covered by any of the labor agreements specified below to agree to all of the foregoing promises and undertakings, to the same effect as herein provided with respect to him.

14.2    Subcontractor shall comply with all equal employment opportunity and affirmative action requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964.

14.3    Subcontractor shall comply with and agrees to be bound by all applicable Federal, State and local laws and regulations, including, but not limited to, all Fair Labor Standards Act provisions and California Labor Code provisions covering the work.  Upon request, Subcontractor agrees to submit certified payroll reports to Contractor no later than three (3) working days after labor has been paid.

## SECTION 15.  RECOURSE BY CONTRACTOR

15.1    Failure of Performance

15.1.1    Notice to Cure.  If Subcontractor at any time refuses or neglects to supply enough properly skilled workers and proper materials, or fails to properly and diligently prosecute the work covered by this Agreement, or fails to make prompt payment to his workers, sub-subcontractors or suppliers, or becomes delinquent with respect to contributions or payments required to be made to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust, or is otherwise guilty of a material breach of a provision of this Agreement, and fails within forty-eight (48) hours after receipt of written notice to commence and continue satisfactory correction of such default with diligence and promptness, then Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

(a).    Supply such number of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work, or any part thereof which Subcontractor has failed to complete or perform, and charge the cost thereof to Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit, and actual attorneys' fees incurred as a result of Subcontractor's failure of performance;

(b)    Contract with one or more additional contractors to perform such part of Subcontractor's work as Contractor shall determine will provide the most expeditious completion of the total work and charge the cost thereof to Subcontractor; and

(c)    Withhold payment of any monies due Subcontractor pending corrective action to the extent required by and to the satisfaction of Contractor.

In the event of an emergency affecting the safety of persons or property, Contractor may proceed as above without notice.

15.1.2    Termination for Default.  If Subcontractor fails to commence and satisfactorily continue correction of a default within forty-

8

eight (48) hours after receipt by Subcontractor of the notice issued under Section 15, then Contractor may terminate Subcontractor's right to perform under this Agreement and use any materials, implements, equipment, appliances or tools furnished by or belonging to Subcontractor to complete Subcontractor's work without any further compensation to Subcontractor for such use. Contractor also may furnish those materials and equipment, and/or employ such workers or subcontractors as Contractor deems necessary to maintain the orderly progress of the work.

In such case, Subcontractor shall be entitled to no further payment until the balance of Subcontractor's work has been completed. At that time, all of the costs incurred by Contractor in performing Subcontractor's work, including a markup of fifteen percent (15%) for overhead and profit on such expenses, plus actual attorneys' fees as provided above, shall be deducted from any monies due or to become due Subcontractor. Subcontractor shall be liable for the payment of any amount by which such expenses may exceed the unpaid balance of the Contract Price.

15.1.3    Termination for Convenience. Contractor may at any time and for any reason terminate Subcontractor's services and work at Contractor's convenience. Cancellation shall be by service of written notice to Subcontractor's place of business.

Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the work and placing of orders for materials, facilities and supplies in connection with the performance of this Agreement, and shall, if requested, make every reasonable effort to procure cancellation of all existing orders or contracts upon terms satisfactory to Contractor, or at the option of Contractor, give Contractor the right to assume those obligations directly, including all benefits to be derived therefrom. Subcontractor shall thereafter do only such work as may be necessary to preserve and protect the work already in progress and to protect material and equipment on the jobsite or in transit thereto.

Upon such termination, Subcontractor shall be entitled to payment in accordance with Section 4 only as follows: (1) the actual cost of the work completed in conformity with this Agreement; plus, (2) such other costs actually incurred by Subcontractor as are permitted by the prime contract and approved by Owner; plus (3) overhead and profit as defined in the specifications or if not defined in the specifications no more than (5%) for overhead and profit. There shall be deducted from such sums as provided in this subparagraph the amount of any payments made to Subcontractor prior to the date of the termination of this Agreement. Subcontractor shall not be entitled to any claim or claim of lien against Contractor or Owner for any additional compensation or damages in the event of such termination and payment.

15.1.4    Grounds for Withholding Payment. Contractor may withhold, or on account of subsequently discovered evidence, nullify the whole or part of any payment to the extent necessary to protect Contractor from loss, including costs and attorneys' fees, on account of (1) defective work not remedied; (2) claims filed or reasonable evidence indicating probable filing of claim; (3) failure of Subcontractor to make payments properly to his subcontractors or for material, labor or fringe benefits; (4) a reasonable doubt that this Agreement can be completed for the balance then unpaid; (5) damage to another subcontractor; (6) penalties assessed against Contractor or Subcontractor for failure of Subcontractor to comply with State, Federal or local laws and regulations; or (7) any other ground for withholding payment allowed by State or Federal law, or as otherwise provided in this Agreement. When the above matters are rectified, such amounts as then due and owing shall be paid or credited to Subcontractor.

15.2    Bankruptcy

15.2.1    Termination Absent Cure. Upon the appointment of a receiver for Subcontractor or upon Subcontractor making an assignment for the benefit of creditors or if Subcontractor seeks protection under the Bankruptcy Code or commits any other act of insolvency, Contractor may terminate this Agreement upon giving forty-eight (48) hours written notice, by certified mail, to Subcontractor and its surety, if any. If an order for relief is entered under the Bankruptcy Code with respect to Subcontractor, Contractor may terminate this Agreement by giving forty-eight (48) hours written notice, by certified mail, to Subcontractor, its trustee, and its surety, if any, unless Subcontractor, the surety, or the trustee:

(a)    Promptly cures all defaults;
(b)    Provides adequate assurance of future performance;
(c)    Compensates Contractor for actual pecuniary loss resulting from such defaults; and
(d)    Assumes the obligations of Subcontractor within the statutory time limits.

15.2.2    Interim Remedies. If Subcontractor is not performing in accordance with the schedule of work at the time of entering an order for relief, or at any subsequent time, Contractor, while awaiting the decision of Subcontractor or its trustee to reject or to accept this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Section as are reasonably necessary to maintain the schedule of work.

Contractor may offset against any sums due or to become due Subcontractor all costs incurred in pursuing any of the remedies provided hereunder, including, but not limited to, reasonable overhead, profit and actual attorneys' fees incurred as a result of Subcontractor's non-performance.

9

Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

## SECTION 16. <u>INDEMNIFICATION</u>

16.1.1 <u>Subcontractor's Performance</u>. With the exception that this Section 16 shall in no event be construed to require indemnification by Subcontractor to a greater extent than permitted under the public policy of the State of California, Subcontractor shall indemnify and save harmless Owner and Contractor, including their officers, agents, employees, affiliates, parents and subsidiaries and each of them, of and from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liability, in law or in equity, of every kind and nature whatsoever ("Claims") arising out of or in connection with Subcontractor's operations to be performed under this Agreement for, but not limited to:

(a) Personal injury, including, but not limited to, bodily injury, emotional injury, sickness or disease, or death to persons, including, but not limited to, any employees or agents of Subcontractor, Owner, Contractor, or any other subcontractor and/or damage to property of anyone (including loss of use thereof), caused or alleged to be caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable regardless of whether such personal injury or damage is caused by a party indemnified hereunder.

(b) Penalties imposed on account of the violation of any law, order, citation, rule, regulation, standard, ordinance or statute, caused by the action or inaction of Subcontractor.

(c) Infringement of any patent rights, which may be brought against the Contractor or Owner arising out of Subcontractor's work.

(d) Claims and liens (See Section 9) for labor performed or materials used or furnished to be used on the job, including all incidental or consequential damages resulting to Contractor or Owner from such claims or liens.

(e) Subcontractor's failure to fulfill the covenants set forth in each subpart of Section 14, Labor Relations.

(f) Failure of Subcontractor to comply with the provisions of Section 17, Casualty Insurance.

(g) Any violation or infraction by Subcontractor of any law, order, citation, rule, regulation, standard, ordinance or statute in any way relating to the occupational health or safety of employees, including, but not limited to, the use of Contractor's or other's equipment, hoist, elevators, or scaffolds (See Sections 19 and 21).

The indemnification provisions of (a) through (g) above shall extend to Claims occurring after this Agreement is terminated as well as while it is in force. Such indemnity provisions apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees. Subcontractor, however, shall not be obligated under this Agreement to indemnify Owner or Contractor for Claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents, employees or independent contractors who are directly responsible to Owner or Contractor, or for defects in design furnished by such persons.

16.1.2 Subcontractor shall:

(a) At Subcontractor's own cost, expense and risk, defend all Claims as defined in Section 16.1.1 that may be brought or instituted by third persons, including, but not limited to, governmental agencies or employees of Subcontractor, against Contractor or Owner or their agents or employees or any of them;

(b) Pay and satisfy and judgment or decree that may be rendered against Contractor or Owner or their agents or employees, or any of them, arising out of any such claim; and/or

(c) Reimburse Contractor or Owner or their agents or employees for any and all legal expense incurred by any of them in connection herewith or in enforcing the indemnity granted in this Section 16.

16.2 <u>Risk of Loss</u>

All work covered by this Agreement done at the site or in preparing or delivering materials or equipment, or any or all of them, to the site shall be at the risk of Subcontractor exclusively until the completed work is accepted by Contractor.

16.3 <u>No Limitation of Liability</u>

The indemnities set forth in this Section 16 shall not be limited by the insurance requirements set forth in Section 17.

## SECTION 17. <u>INSURANCE</u>

10

17.1    Casualty Insurance

Subcontractor shall, at his expense, procure and maintain insurance on all of his operations, in companies acceptable to Contractor, and in accordance with Far Clause 52.0228-4502 minimum insurance required as follows:

17.1.1    Workers' Compensation and Employer's Liability Insurance. Workers' Compensation insurance shall be provided as required by any applicable law or regulation. Employer's Liability insurance shall be provided in amounts not less than:

$1,000,000 each accident for bodily injury by accident
$1,000,000 policy limit for bodily injury by disease
$1,000,000 each employee for bodily injury by disease

If there is an exposure of injury to Subcontractor's employees under the U.S. Longshoremen's and Harbor Workers' Compensation Act, the Jones Act or under laws, regulations or statutes applicable to maritime employees, coverage shall be included for such injuries or claims.

17.1.2    General Liability Insurance. Subcontractor shall carry Comprehensive General Liability or Commercial General Liability insurance covering all operations by or on behalf of Subcontractor providing insurance for bodily injury liability and property damage liability for the limits of liability indicated below and including coverage for:

(1)    Premises and operations;
(2)    Products and completed operations;
(3)    Contractual liability insuring the obligations assumed by Subcontractor in this Agreement;
(4)    Broad form property damage (including completed operations);
(5)    Explosion, collapse and underground hazards; and
(6)    Personal injury liability.

Except with respect to bodily injury and property damage included within the products and completed operations hazards, the aggregate limit, where applicable, shall apply separately to Subcontractor's work under this Agreement.

One of the following coverage forms is required:

- Comprehensive General Liability
- Commercial General Liability (Occurrence)
- Commercial General Liability (Claims Made)

17.1.2.1 Subcontractor shall carry a Comprehensive General Liability policy, the limits of liability shall not be less than a combined single limit for bodily injury, property damage and personal injury liability of: $1,000,000 each occurrence; $1,000,000 aggregate. Contractor, his officers, directors and employees and Owner shall be named as additional insured under the Comprehensive General Liability insurance policy. The policy shall stipulate that the insurance afforded the additional insured shall apply as primary insurance and that any other insurance carried by Contractor, his officers, directors and employees or Owner will be excess only and will not contribute with this insurance.

17.1.3    Automobile Liability Insurance. Subcontractor shall carry automobile liability insurance, including coverage for all owned, hired and non-owned automobiles. The limits of liability shall be not less than $1,000,000 combined single limit each accident for bodily injury and property damage.

17.1.4    Certificates of insurance, as evidence of the insurance required by this Agreement, shall be furnished by Subcontractor to Contractor before any work hereunder is commenced by Subcontractor. The certificates of insurance shall provide that there will be no cancellation or reduction of coverage without thirty (30) days prior written notice to Contractor.

17.1.5    Contractor may take such steps as are necessary to assure Subcontractor's compliance with his obligations under this Section 16. In the event Subcontractor fails to maintain any insurance coverage required under this Agreement, Contractors may maintain such coverage and charge the expense to Subcontractor, or terminate this Agreement.

17.1.6    The required insurance shall be subject to the approval of Contractor, but any acceptance of insurance certificates by Contractor shall in no way limit or relieve Subcontractor of the duties and responsibilities by him in this Agreement. If higher limits or other forms of insurance are required in the Contract Documents, Subcontractor will comply with such requirements.

17.4    Failure of contractor to enforce in a timely manner any of the provisions of this Section 17 shall not act as a waiver to

11

enforcement of any of these provisions at a later date in the performance of this Agreement. Any exceptions to the provisions of this Section 16 must be delineated in the Contract Documents.

## SECTION 18.  CLAIMS RESOLUTION PROCEDURE

18.1     Agreement to Arbitrate

All claims, disputes and matters in question arising out of, or relating to this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, shall be decided by the claims procedure, including any arbitration clause, specified in the prime contract between Contractor and Owner. In the absence of an agreement to arbitrate in the prime contract, no claims or disputes shall be arbitrated unless provided for in this Agreement or mutually agreed upon by Contractor and Subcontractor in writing.

18.2     Arbitration Procedures (if applicable)
In the event the prime contract contains an arbitration provision or if arbitration is provided for in this Agreement, the following shall apply:

18.2.1    Notice of Demand. Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and shall conform to the requirements of the arbitration provision set forth in the prime contract. The demand for arbitration shall be made within a reasonable time after written notice of the claim, dispute or other matter in question has been given, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

18.2.     Award. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

18.2.3    Work Continuation and Payment. Unless otherwise agreed in writing, Subcontractor shall carry on the work and maintain the schedule of work pending arbitration, and, if so, Contractor shall continue to make payments in accordance with this Agreement.

18.2.4    Consolidated Arbitration Proceedings. To the extent not prohibited by their contracts with others, the claims and disputes of Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding. In this event, it shall be the responsibility of Subcontractor to prepare and present Contractor's case, to the extent the proceedings are related to this Agreement. Should Contractor enter into arbitration with the Owner or others regarding matters relating to this Agreement, Subcontractor shall be bound by the result of the arbitration to the same degree as the Contractor.

18.2.5    No Limitation of Rights or Remedies. This Section shall not be deemed a limitation of any rights or remedies which Subcontractor may have under any Federal or State mechanics' lien laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by him.

18.2.6    Jurisdictional Disputes.
a)     The Subcontractor accepts and agrees to be bound by the procedural rules and regulations and decisions of the appropriate tribunals specified in the appropriate labor agreements for the settlement of jurisdictional disputes and will immediately comply with any decisions of said tribunals, which affect the performance of work covered by the Subcontract. Subcontractor agrees to bind, by written contract, all of his subcontractors of every tier to said procedural rules and regulation and decisions of said tribunals in the same manner and to the same effect as provided herein with respect to Subcontractor.
b)     During the performance of Subcontractor's Work, the Subcontractor, its employees, Sub-Subcontractor's and suppliers will use such entrances to the job as maybe designated from time to time by the Contractor.

## SECTION 19.  SAFETY PRACTICES
Subcontractor shall comply fully with all laws, orders, citations, rules, regulations, standards and statutes with respect to occupational health and safety, the handling and storage of hazardous materials, accident prevention, safety equipment and practices including the accident prevention and safety program of Owner and Contractor. Subcontractor shall conduct inspections to determine that safe working conditions and equipment exist and accepts sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and suppliers of material and equipment, for adequacy of and required use of all safety equipment and for full compliance with the aforesaid laws, orders, citations, rules, regulations, standards and statutes.

## SECTION 20.  WARRANTY
Subcontractor warrants to Owner, Architect and Contractor that all materials and equipment furnished shall be new unless otherwise specified and that all work under this Agreement shall be of good quality, free from faults and defects and in conformance with the Contract

12

Documents. All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The warranty provided in this Section 20 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

## SECTION 21. USE OF CONTRACTOR'S EQUIPMENT

In the event Subcontractor shall use Contractor's equipment, materials, labor, supplies or facilities, Subcontractor shall reimburse Contractors at a predetermined rate, except as provided in Section 15.1.2 or as otherwise stated herein. Further, Subcontractor assumes all responsibility for physical damage to such equipment, materials, labor, supplies, or facilities used by Subcontractor; Subcontractor shall have full responsibility for all acts or omissions of Contractor's employees with regard to Subcontractor's use or employment of them. Subcontractor accepts any and all of Contractor's equipment, materials, labor, supplies or facilities as furnished. Subcontractor shall also indemnify Contractor, General Contractor and Owner to the same extent as listed in Section 16 above.

## SECTION 22. ASSIGNMENT OF CONTRACT

Subcontractor shall not, without written consent of Contractor, assign, transfer, or sublet any portion or part of the work required by this Agreement, or assign any payment hereunder to others.

## SECTION 23. INDEPENDENT CONTRACTOR

Subcontractor is an independent contractor and shall, at his sole cost and expense, and without increase in the Contract Price, comply with all laws, rules, ordinances and regulations of all governing bodies having jurisdiction over the work; obtain all necessary permits and licenses therefore, all USA layout Permits (for any Underground Work, separate from Contractors USA permit or layout), pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes insurance and contributions for social security and unemployment which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules or regulations. Subcontractor, upon request, shall furnish evidence satisfactory to Contractor that any or all of the foregoing obligations have been fulfilled.

## SECTION 24. CLEAN-UP

At all times during the course of construction, Subcontractor shall perform his work so as to maintain the site in a clean, safe and orderly condition. Upon completion of the work under this Agreement, Subcontractor shall remove from the site all hazardous materials, temporary structures, debris and waste incident to his operation and clean all surfaces, fixtures, equipment, etc, relative to the performance of this Agreement.

## SECTION 25. ATTORNEYS' FEES

In the event the parties become involved in litigation or arbitration with each other arising out of this Agreement or other performance thereof in which the services of an attorney or other expert are reasonably required, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee award shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the size of a judgment, it being the intention of the parties to fully compensate for all attorneys' fees and experts' fees paid or incurred in good faith.

## SECTION 26. LABOR AGREEMENTS (List labor agreements to which Contractor is signatory or enter NONE if Contractor has no labor agreements.)

## SECTION 27. SPECIAL PROVISIONS (Including unit pricing, if applicable)

Subcontractor shall not enter any job site until K.O.O Construction has received the appropriate insurance certificates according to Section 16 of this Subcontract Agreement.

**CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD. ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR OF THE BOARD, WHOSE ADDRESS IS:**

Contractors State License Board
Post Office Box 26000
Sacramento, California 95826

13

Dated: _____1/6/2014_____
CONTRACTOR: K.O.O. Construction Inc.

By _____
            Keith O. Odister

_____2510 Boatman Avenue, Suite B_____

_____West Sacramento, CA 95691_____
                    (Address)

_____560169_____
            (Contractor's License No.)


Dated: _____12/24/13_____
SUBCONTRACTOR:  DLF Construction, Inc

By: _____  Jorge Diaz, President

_____121 East 31st St. Suite C_____

_____National City, CA 91950_____
                    (Address)

_____919666_____
            (Contractor's License No.)

Exhibit B-2



**K.O.O. Construction, Inc.**
2510 Boatman
West Sacramento, CA 95691

4/4/2014 10:03
916-371-3388
916-371-1188 F

## SUBCONTRACTOR CHANGE ORDER

| Project: | Child Development Center | K.O.O. Construction Change Order #: | 001 |
|---|---|---|---|
| To: | De La Fuente Construction, Inc | From: | Matthew Alix |
| Re: | | Date: | 4/4/2014 |
| Proposal Request Number: | | Contract Number: | N62473-08-D-1655, 003 |

| | Original Contract Amount | $ | 353,000.00 |
|---|---|---|---|
| | Previous Change Order amounts | $ | |

**ADDITIONS:**

| | Mod # | | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|
| 1 | | Man gate deleted at the trash enclosures provide CMU infills | | | $ | 1,209 |
| 2 | | | | | $ | - |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | 1,209 |

**DEDUCTIONS:**

| | Sheet | Description | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | $ | - |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | |

| | Total Change Order Amount (NTE) | $ | 1,209 |
|---|---|---|---|
| Subcontractor signed acceptance | | | |
| | Total Contract Amount | $ | 354,209 |
| Printed name | Date: | | |



**K.O.O. Construction, Inc.**
2510 Boatman
West Sacramento, CA 95691

5/21/2014 8:06
916-371-3388
916-371-1188 F

## SUBCONTRACTOR CHANGE ORDER

| Project: | Child Development Center | K.O.O. Construction Change Order #: | 002 |
|---|---|---|---|
| To: | De La Fuente Construction, Inc | From: | Matthew Alix |
| Re: | Bulletin 10 | Date: | 5/21/2014 |
| Proposal Request Number: | | Contract Number: | N62473-08-D-1655, 0003 |

| | | Original Contract Amount | $ | 353,000.00 |
|---|---|---|---|---|
| | | Previous Change Order amounts | $ | 1,209.10 |

**ADDITIONS:**

| | Mod # | | Material | Labor | | Subtotal |
|---|---|---|---|---|---|---|
| 1 | | Bulletin 10, ADA Ramp detail at Lincoln Area | | | $ | 7,704 |
| 2 | | | | | $ | - |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | 7,704 |

**DEDUCTIONS:**

| | Sheet | Description | Material | Labor | | Subtotal |
|---|---|---|---|---|---|---|
| 1 | | | | | $ | |
| 2 | | | | | $ | - |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | - |

| | | Total Change Order Amount (NTE) | $ | 7,704 |
|---|---|---|---|---|

Subcontractor signed acceptance

Printed name     Jorge Diaz     Date: 5·21·2014

| | Total Contract Amount | $ | 361,913 |
|---|---|---|---|

**K.O.O. Construction, Inc.**
2910 Hooiman
West Sacramento, CA 95691

## SUBCONTRACTOR CHANGE ORDER

| Project: | Child Development Center | K.O.O. Consecutive Change Order #: | 609 |
|---|---|---|---|
| To: | De La Fuente Construction, Inc. | Phone: | Marlene Ala |
| Re: | | Date: | 5/1/2014 |
| Proposal/Request Number: | | Contract Number: | N62473-M-0-1982, MOD |

|  |  | Original Contract Amount | $ | 362,500.00 |
|---|---|---|---|---|
|  |  | Prev in Change Order Amount | $ | 6,056.00 |

**ADDITIONS:**

| | Item# | Description | Material | Labor | Subtotal |
|---|---|---|---|---|---|
| 1 | | Jacking up 2'x16' CMU block, patin wall to include, CMU blocks walls existing, mortar, sandbag w/grid and horizontal rebar | | | $ 5,586 |
| 2 | | | | | $ - |
| 3 | | | | | $ - |
| 4 | | | | | $ - |
| 5 | | | | | $ - |
| 6 | | | | | $ - |
| 7 | | | | | $ - |
| | | | Subtotal | $ - | $ - | $ 5,586 |

**DEDUCTIONS:**

| | Item# | Description | Material | Labor | Subtotal |
|---|---|---|---|---|---|
| 1 | | | | | $ - |
| 2 | | | | | $ - |
| 3 | | | | | $ - |
| 4 | | | | | $ - |
| 5 | | | | | $ - |
| | | | Subtotal | $ - | $ - | $ - |

| | Total Change Order Amount (NTE) | $ | 5,586 |
|---|---|---|---|
| Subcontractor Signed Acceptance: | Total Contract Amount | $ | 366,913 |

Printed name: _John Diaz_   Date: 5/8/14



**K.O.O. Construction, Inc.**
2510 Boatman
West Sacramento, CA 95691

9/12/2014 9:52
916-371-3386
916-371-1188 F

## SUBCONTRACTOR CHANGE ORDER

| Project: | Child Development Center | | K.O.O. Construction Change Order #: | | 004 |
|---|---|---|---|---|---|
| To: | De La Fuente Construction, Inc | | From: | Matthew Alic | |
| Re: | | | Date: | 9/12/2014 | |
| Proposal Request Number: | | | Contract Number: | N62473-08-D-1655, 0003 | |

Original Contract Amount  $  353,000.00
Previous Change Order amounts  $  13,913.10

**ADDITIONS:**

| | Mod # | | | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|---|
| 1 | N/A | Labor and Supervision Overtime Charges from 1/26/2014 to 2/28/2014 | | | | $ | |
| 2 | | | | | | $ | 1,017 |
| 3 | | | | | | $ | - |
| 4 | | | | | | $ | - |
| 5 | | | | | | $ | - |
| 6 | | | | | | $ | - |
| 7 | | | | | | $ | - |
| | | | Subtotal | $    - | $    - | $ | 1,017 |

**DEDUCTIONS:**

| | Sheet | Description | | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | $ | - |
| 2 | | | | | | $ | - |
| 3 | | | | | | $ | - |
| 4 | | | | | | $ | - |
| 5 | | | | | | $ | - |
| 6 | | | | | | $ | - |
| 7 | | | | | | $ | - |
| | | | Subtotal | $    - | $    - | $ | - |

Subcontractor signed acceptance

Printed name  Jorge Diez  Date: 9/17/14

Total Change Order Amount (NTE)  $  1,017

Total Contract Amount  $  367,930



**K.O.O. Construction, Inc.**
2510 Boatman
West Sacramento, CA 95691

11/6/2014 12:01
916-371-3388
916-371-1188 F

## SUBCONTRACTOR CHANGE ORDER

| | | | | |
|---|---|---|---|---|
| Project: | Child Development Center | K.O.O. Construction Change Order #: | | 005 |
| To: | De La Fuente Construction, Inc | From: | Matthew Alix | |
| Re: | | Date: | 11/6/2014 | |
| Proposal Request Number: | | Contract Number: | N62473-08-D-1655, 0003 | |

|  | |
|---|---|
| Original Contract Amount | $ 353,000.00 |
| Previous Change Order amounts | $ 14,930.10 |

**ADDITIONS:**

| | Mod # | | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|
| 1 | N/A | Saw cut, demo and haul concrete, excavate area for ADA Compliance | | | $ | 10,000 |
| 2 | | | | | $ | - |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | 10,000 |

**DEDUCTIONS:**

| | Sheet | Description | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | $ | - |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | - |

Jorge Diaz
Digitally signed by Jorge Diaz
DN: cn=Jorge Diaz, o=DLF,
ou=DLF,
email=jdiaz@dlci.com, c=US
Date: 2014.11.06 14:20:49
-08'00'

Subcontractor signed acceptance

**Jorge Diaz** Date: 11/6/2014

Printed name

| | |
|---|---|
| **Total Change Order Amount** | $ 10,000 |
| **Total Contract Amount** | $ 377,930 |



**K.O.O. Construction, Inc.**
2510 Boatman
West Sacramento, CA 95691

2/24/2015 9:54
916-371-3388
916-371-1188 F

## SUBCONTRACTOR CHANGE ORDER

| | |
|---|---|
| Project: Child Development Center | K.O.O. Construction Change Order #: 006 |
| To: De La Fuente Construction, Inc | From: Matthew Alix |
| Re: | Date: 2/24/2015 |
| Proposal Request Number: | Contract Number: N62473-08-D-1655, 0003 |

Original Contract Amount    $    353,000.00
Previous Change Order amounts    $    24,930.10

**ADDITIONS:**

| | Mod # | | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|
| 1 | N/A | Repair Works damaged by landscape and playground contractors | | | $ | 2,407 |
| 2 | N/A | Repair 434 ft at various locations sidewalk & 110 ft driveway | | | $ | 13,746 |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | 16,154 |

**DEDUCTIONS:**

| | Sheet | Description | Material | Labor | Subtotal | |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | $ | - |
| 3 | | | | | $ | - |
| 4 | | | | | $ | - |
| 5 | | | | | $ | - |
| 6 | | | | | $ | - |
| 7 | | | | | $ | - |
| | | Subtotal | $ - | $ - | $ | - |

Jorge Diaz DLF
Digitally signed by Jorge Diaz DLF
DN: cn=Jorge Diaz DLF, o=De La Fuente Construction, Inc,
ou=Construction,
email=jorge@koocc.com, c=US
Date: 2015.02.24 14:52:24
-08'00'

Subcontractor signed acceptance

Printed name    *Jorge Diaz DLF*    Date:    02-24-2015

Change Order Amount    $    16,154

Total Contract Amount    $    394,084

Exhibit C

 **De La Fuente Construction, Inc.**

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/24/2014 | 341 |

**PAID 03/26/2014**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacramento, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|-------------|---------|-----------|---------|-----|-----|------|--------|---------|--------|
| Mobilization | 17,484.30 | | | 0 | ea | 17,484.30 | 0.00% | 0.00% | 0.00 |
| Concrete Paving - Parking Lot | 70,000.00 | | | 0.5 | | 70,000.00 | 50.00% | 50.00% | 35,000.00 |
| Trash Enclosure - Concrete | 21,000.00 | | | 0 | | 21,000.00 | 0.00% | 0.00% | 0.00 |
| Footing and SOG reinforcement | 31,500.00 | | | 0 | | 31,500.00 | 0.00% | 0.00% | 0.00 |
| Structural FootingsConcrete | 49,227.00 | | | 0 | | 49,227.00 | 0.00% | 0.00% | 0.00 |
| Concrete Slab on Grade | 56,788.70 | | | 0 | | 56,788.70 | 0.00% | 0.00% | 0.00 |
| CMU Wall | 33,000.00 | | | 0 | | 33,000.00 | 0.00% | 0.00% | 0.00 |
| 4"sidewal Reinforced | 51,000.00 | | | 0 | | 51,000.00 | 0.00% | 0.00% | 0.00 |
| Barrier & Mow Curb | 16,000.00 | | | 0.6 | | 16,000.00 | 60.00% | 60.00% | 9,600.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 0 | | 7,000.00 | 0.00% | 0.00% | 0.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU Infills | 1,209.00 | | | 0 | | 1,209.00 | 0.00% | 0.00% | 0.00 |
| ~~~~~ CHANGE ORDER ~~~~~ | | | | | | | | | |
| April 18, 2014 | | | | | | | | | |
| > Added 1 04 Concrete. (+$1,209.00) | | | | | | | | | |
| Total change to estimate +USD 1,209.00 | | | | | | | | | |

| **Total** | **USD 44,600.00** |
|-----------|-------------------|
| **Payments/Credits** | **USD -44,600.00** |
| **Balance Due** | **USD 0.00** |



# Invoice

| Date | Invoice # |
|------|-----------|
| 2/24/2014 | 348 |

**PAID 04/21/2014**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacrament, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|-------------|---------|-----------|---------|-----|-----|------|--------|---------|--------|
| Mobilization | 17,484.30 | | | 1 | ea. | 17,484.30 | 100.00% | 100.00% | 17,484.30 |
| Concrete Paving – Parking Lot | 70,000.00 | 35,000.00 | 50.00% | 0 | | 70,000.00 | 0.00% | 50.00% | 0.00 |
| Trash Enclosure - Concrete | 21,000.00 | | | 0 | | 21,000.00 | 0.00% | 0.00% | 0.00 |
| Footing and SOG reinforcement | 31,500.00 | PAID | | 1 | | 31,500.00 | 100.00% | 100.00% | 31,500.00 |
| Structural FootingsConcrete | 49,227.00 | | | 0 | | 49,227.00 | 0.00% | 0.00% | 0.00 |
| Concrete Slab on Grade | 56,788.70 | | | 0 | | 56,788.70 | 0.00% | 0.00% | 0.00 |
| CMU Wall | 33,000.00 | | | 0 | | 33,000.00 | 0.00% | 0.00% | 0.00 |
| 4"sidewal Reinforced | 51,000.00 | | | 0 | | 51,000.00 | 0.00% | 0.00% | 0.00 |
| Barrier & Mow Curb | 16,000.00 | 9,600.00 | 60.00% | 0 | | 16,000.00 | 0.00% | 60.00% | 0.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 0 | | 7,000.00 | 0.00% | 0.00% | 0.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU infills | 1,209.00 | | | 0 | | 1,209.00 | 0.00% | 0.00% | 0.00 |
| | | | | | | | | | |
| ——— CHANGE ORDER ——— | | | | | | | | | |
| April 18, 2014 | | | | | | | | | |
| > Added 1 04 Concrete. (+$1,209.00) | | | | | | | | | |
| Total change to estimate ÷USD 1,209.00 | | | | | | | | | |
| | | | | | | | | | |
| Subtotal | | | | | | | | | 48,984.30 |
| Amount of Retainage | | | | | | -10.00% | | | -4.898.43 |

| **Total** | USD 44,085.87 |
|-----------|---------------|
| **Payments/Credits** | USD -44,085.87 |
| **Balance Due** | USD 0.00 |



**De La Fuente Construction, Inc.**

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/20/2014 | 349 |

**PAID 05/07/2014**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacramento, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|-------------|---------|-----------|---------|-----|-----|------|--------|---------|--------|
| Mobilization | 17,484.30 | 17,484.30 | 100.00% | 0 | ea | 17,484.30 | 0.00% | 100.00% | 0.00 |
| Concrete Paving - Parking Lot | 70,000.00 | 35,000.00 | 50.00% | 0 | | 70,000.00 | 0.00% | 50.00% | 0.00 |
| Trash Enclosure - Concrete | 21,000.00 | | | 0.1 | | 21,000.00 | 10.00% | 10.00% | 2,100.00 |
| Footing and SOG reinforcement | 31,500.00 | 31,500.00 | 100.00% | 0 | | 31,500.00 | 0.00% | 100.00% | 0.00 |
| Structural FootingsConcrete | 49,227.00 | | | 1 | | 49,227.00 | 100.00% | 100.00% | 49,227.00 |
| Concrete Slab on Grade | 56,788.70 | | | 0 | | 56,788.70 | 0.00% | 0.00% | 0.00 |
| CMU Wall | 33,000.00 | | | 0 | | 33,000.00 | 0.00% | 0.00% | 0.00 |
| 4"sidewal Reinforced | 51,000.00 | | | 0 | | 51,000.00 | 0.00% | 0.00% | 0.00 |
| Barrier & Mow Curb | 16,000.00 | 9,600.00 | 60.00% | 0 | | 16,000.00 | 0.00% | 60.00% | 0.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 0 | | 7,000.00 | 0.00% | 0.00% | 0.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU Infills | 1,209.00 | | | 0 | | 1,209.00 | 0.00% | 0.00% | 0.00 |
| | | | | | | | | | |
| ~~~~ CHANGE ORDER ~~~~ | | | | | | | | | |
| April 18, 2014 | | | | | | | | | |
| > Added 1 04 Concrete. (+$1,209.00) | | | | | | | | | |
| Total change to estimate +USD 1,209.00 | | | | | | | | | |
| | | | | | | | | | |
| Subtotal | | | | | | | | | 51,327.00 |
| Amount of Retainage | | | | | | -10.00% | | | -5,132.70 |

| Total | USD 46,194.30 |
|-------|---------------|
| **Payments/Credits** | USD -46,194.30 |
| **Balance Due** | USD 0.00 |



**De La Fuente Construction, Inc.**

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/21/2014 | 353 |

**PAID**
**06/20/2014**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacramento, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| | P.O. No. | Terms | Project |
|---|---|---|---|
| | | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Mobilization | 17,484.30 | 17,484.30 | 100.00% | 0 | ca | 17,484.30 | 0.00% | 100.00% | 0.00 |
| Concrete Paving – Parking Lot | 70,000.00 | 35,000.00 | 50.00% | 0.5 | | 70,000.00 | 30.00% | 80.00% | 21,000.00 |
| Trash Enclosure – Concrete | 21,000.00 | 2,100.00 | 10.00% | 0.9 | | 21,000.00 | 90.00% | 100.00% | 18,900.00 |
| Footing and SOG reinforcement | 31,500.00 | 31,500.00 | 100.00% | 0 | | 31,500.00 | 0.00% | 100.00% | 0.00 |
| Structural FootingsConcrete | 49,227.00 | 49,227.00 | 100.00% | 0 | | 49,227.00 | 0.00% | 100.00% | 0.00 |
| Concrete Slab on Grade | 56,788.70 | | | 1 | | 56,788.70 | 100.00% | 100.00% | 56,788.70 |
| CMU Wall | 33,000.00 | | | 0 | | 33,000.00 | 0.00% | 0.00% | 0.00 |
| 4"sidewal Reinforced | 51,000.00 | | | 0 | | 51,000.00 | 0.00% | 0.00% | 0.00 |
| Barrier & Mow Curb | 16,000.00 | 9,600.00 | 60.00% | 0 | | 16,000.00 | 0.00% | 60.00% | 0.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 0 | | 7,000.00 | 0.00% | 0.00% | 0.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU Infills | 1,209.00 | | | 1 | | 1,209.00 | 100.00% | 100.00% | 1,209.00 |
| ~~~~ CHANGE ORDER ~~~~ | | | | | | | | | |
| April 18, 2014 | | | | | | | | | |
| > Added 1 04 Concrete. (+$1,209.00) | | | | | | | | | |
| Total change to estimate +USD 1,209.00 | | | | | | | | | |
| Subtotal | | | | | | | | | 97,897.70 |
| Amount of Retainage | | | | | | -10.00% | | | -9,789.77 |

| **Total** | USD 88,107.93 |
|---|---|
| **Payments/Credits** | USD -88,107.93 |
| **Balance Due** | USD 0.00 |



De La Fuente
Construction, Inc.

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/22/2014 | 406 |

**PAID**
**07/28/2014**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacrament, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| | P.O. No. | Terms | Project |
|---|----------|-------|---------|
| | | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|-------------|---------|-----------|---------|-----|-----|------|--------|---------|--------|
| Mobilization | 17,484.30 | 17,484.30 | 100.00% | 0 | ca | 17,484.30 | 0.00% | 100.00% | 0.00 |
| Concrete Paving - Parking Lot | 70,000.00 | 70,000.00 | 100.00% | 0 | | 70,000.00 | 0.00% | 100.00% | 0.00 |
| Trash Enclosure - Concrete | 21,000.00 | 21,000.00 | 100.00% | 0 | | 21,000.00 | 0.00% | 100.00% | 0.00 |
| Footing and SOG reinforcement | 31,500.00 | 31,500.00 | 100.00% | 0 | | 31,500.00 | 0.00% | 100.00% | 0.00 |
| Structural FootingsConcrete | 49,227.00 | 49,227.00 | 100.00% | 0 | | 49,227.00 | 0.00% | 100.00% | 0.00 |
| Concrete Slab on Grade | 56,788.70 | 56,788.70 | 100.00% | 0 | | 56,788.70 | 0.00% | 100.00% | 0.00 |
| CMU Wall | 33,000.00 | | | 0 | | 33,000.00 | 0.00% | 0.00% | 0.00 |
| 4"sidewal Reinforced | 51,000.00 | | | 0 | | 51,000.00 | 0.00% | 0.00% | 0.00 |
| Barrier & Mow Curb | 16,000.00 | 9,600.00 | 60.00% | 0 | | 16,000.00 | 0.00% | 60.00% | 0.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 0 | | 7,000.00 | 0.00% | 0.00% | 0.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU Infills | 1,209.00 | 1,209.00 | 100.00% | 0 | | 1,209.00 | 0.00% | 100.00% | 0.00 |
| ⎯⎯⎯ CHANGE ORDER ⎯⎯⎯ April 18, 2014 > Added 1 04 Concrete. (+$1,209.00) Total change to estimate +USD 1,209.00 | | | | | | | | | |
| Change Order #2 ADA Ramp detail at Lincoln Area | 7,704.00 | | | 1 | | 7,704.00 | 100.00% | 100.00% | 7,704.00 |
| ⎯⎯⎯ CHANGE ORDER ⎯⎯⎯ May 21, 2014 > Added 1 04 Concrete. (+$7,704.00) Total change to estimate +USD 7,704.00 | | | | | | | | | |
| Subtotal | | | | | | | | | 7,704.00 |
| Amount of Retainage | | | | | | -10.00% | | | -770.40 |

| **Total** | USD 6,933.60 |
|-----------|--------------|
| **Payments/Credits** | USD -6,933.60 |
| **Balance Due** | USD 0.00 |



De La Fuente
Construction, Inc.

# Invoice

| Date | Invoice # |
|------|-----------|
| 6/22/2014 | 434 |

**PAID 07/28/2014**

Bill To

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacrament, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph.  619.512.5505
Fax. 619.878.2980
Email:  accounting@dlfci.com

| P.O. No. | | Terms | | Project | |
|----------|--|-------|--|---------|--|
| | | | | 14003 CDC Murphy ... | |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|-------------|---------|-----------|---------|-----|-----|------|--------|---------|--------|
| Mobilization | 17,484.30 | 17,484.30 | 100.00% | 0 | ca | 17,484.30 | 0.00% | 100.00% | 0.00 |
| Concrete Paving - Parking Lot | 70,000.00 | 56,000.00 | 80.00% | 0 | | 70,000.00 | 0.00%. | 80.00% | 0.00 |
| Trash Enclosure - Concrete | 21,000.00 | 21,000.00 | 100.00% | 0 | | 21,000.00 | 0.00% | 100.00% | 0.00 |
| Footing and SOG reinforcement | 31,500.00 | 31,500.00 | 100.00% | 0 | | 31,500.00 | 0.00% | 100.00% | 0.00 |
| Structural FootingsConcrete | 49,227.00 | 49,227.00 | 100.00% | 0 | | 49,227.00 | 0.00%· | 100.00% | 0.00 |
| Concrete Slab on Grade | 56,788.70 | 56,788.70 | 100.00% | 0 | | 56,788.70 | 0.00% | 100.00% | 0.00 |
| CMU Wall | 33,000.00 | | | 0 | | 33,000.00 | 0.00% | 0.00% | 0.00 |
| 4"sidewal Reinforced | 51,000.00 | | | 0 | | 51,000.00 | 0.00% | 0.00% | 0.00 |
| Barrier & Mow Curb | 16,000.00 | 9,600.00 | 60.00% | 0.4 | | 16,000.00 | 40.00% | 100.00% | 6,400.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 0 | | 7,000.00 | 0.00% | 0.00% | 0.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU infills | 1,209.00 | 1,209.00 | 100.00% | 0 | | 1,209.00 | 0.00% | 100.00% | 0.00 |
| ~~~ CHANGE ORDER ~~~ April 18, 2014 > Added 1 04 Concrete. (+$1,209.00) Total change to estimate +USD 1,209.00 | | | | | | | | | |
| Change Order #2 ADA Ramp detail at Lincoln Area | 7,704.00 | 7,704.00 | 100.00% | 0 | | 7,704.00 | 0.00% | 100.00% | 0.00 |
| ~~~ CHANGE ORDER ~~~ May 21, 2014 > Added 1 04 Concrete. (+$7,704.00) Total change to estimate +USD 7,704.00 | | | | | | | | | |
| | | | | | | | | | 6,400.00 |
| Subtotal | | | | | | -10.00% | | | |
| Amount of Retainage | | | | | | | | | -640.00 |

| **Total** | USD 5,760.00 |
|-----------|--------------|
| **Payments/Credits** | USD -5,760.00 |
| **Balance Due** | USD 0.00 |



De La Fuente
Construction, Inc.

# Invoice

| Date | Invoice # |
|---|---|
| 7/31/2014 | 447 |

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacrament, CA 95691

PAID
09/23/2014

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| P.O. No. | Terms | Project |
|---|---|---|
| | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|---|---|---|---|---|---|---|---|---|---|
| ~~~~ CHANGE ORDER ~~~~<br>August 8, 2014<br>> Added 1 04 Concrete. (+$5,000.00)<br>Total change to estimate +USD 5,000.00<br>~~~~~~~~~~~~~~~~~~~~~~~~~~<br><br>Subtotal<br>Amount of Retainage | | | | | | -10.00% | | | 74,500.00<br>-7,450.00 |

| | |
|---|---|
| **Total** | USD 67,050.00 |
| **Payments/Credits** | USD -67,050.00 |
| **Balance Due** | USD 0.00 |



# Invoice

| Date | Invoice # |
|------|-----------|
| 7/31/2014 | 447 |

**PAID 09/23/2014**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacramento, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| | P.O. No. | Terms | Project |
|---|---|---|---|
| | | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Mobilization | 17,484.30 | 17,484.30 | 100.00% | 0 | ea. | 17,484.30 | 0.00% | 100.00% | 0.00 |
| Concrete Paving - Parking Lot | 70,000.00 | 56,000.00 | 80.00% | 0.2 | | 70,000.00 | 20.00% | 100.00% | 14,000.00 |
| Trash Enclosure - Concrete | 21,000.00 | 21,000.00 | 100.00% | 0 | | 21,000.00 | 0.00% | 100.00% | 0.00 |
| Footing and SOG reinforcement | 31,500.00 | 31,500.00 | 100.00% | 0 | | 31,500.00 | 0.00% | 100.00% | 0.00 |
| Structural FootingsConcrete | 49,227.00 | 49,227.00 | 100.00% | 0 | | 49,227.00 | 0.00% | 100.00% | 0.00 |
| Concrete Slab on Grade | 56,788.70 | 56,788.70 | 100.00% | 0.5 | | 56,788.70 | 0.00% | 100.00% | 0.00 |
| CMU Wall | 33,000.00 | | | ***** | | 33,000.00 | 50.00% | 50.00% | 16,500.00 |
| 4"sidewal Reinforced | 51,000.00 | | | 0 | | 51,000.00 | 76.47% | 76.47% | 39,000.00 |
| Barrier & Mow Curb | 16,000.00 | 16,000.00 | 100.00% | 0 | | 16,000.00 | 0.00% | 100.00% | 0.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 0 | | 7,000.00 | 0.00% | 0.00% | 0.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU Infills | 1,209.00 | 1,209.00 | 100.00% | 0 | | 1,209.00 | 0.00% | 100.00% | 0.00 |
| | | | | | | | | | |
| ——— CHANGE ORDER ——— | | | | | | | | | |
| April 18, 2014 | | | | | | | | | |
| > Added 1 04 Concrete. (÷$1,209.00) | | | | | | | | | |
| Total change to estimate +USD 1,209.00 | | | | | | | | | |
| | | | | | | | | | |
| Change Order #2 ADA Ramp detail at Lincoln Area | 7,704.00 | 7,704.00 | 100.00% | 0 | | 7,704.00 | 0.00% | 100.00% | 0.00 |
| | | | | | | | | | |
| ——— CHANGE ORDER ——— | | | | | | | | | |
| May 21, 2014 | | | | | | | | | |
| > Added 1 04 Concrete. (+$7,704.00) | | | | | | | | | |
| Total change to estimate +USD 7,704.00 | | | | | | | | | |
| | | | | | | | | | |
| Change Order #3 Block Wall @ Lincoln | 5,000.00 | | | 1 | | 5,000.00 | 100.00% | 100.00% | 5,000.00 |

| Total | |
|---|---|
| **Payments/Credits** | |
| **Balance Due** | |



## De La Fuente Construction, Inc.

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/23/2014 | 465 |

**PAID 08/24/2015**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacrament, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| P.O. No. | Terms | Project |
|----------|-------|---------|
| | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|-------------|---------|-----------|---------|-----|-----|------|--------|---------|--------|
| Mobilization | 17,484.30 | 17,484.30 | 100.00% | 0 | ea | 17,484.30 | 0.00% | 100.00% | 0.00 |
| Concrete Paving - Parking Lot | 70,000.00 | 70,000.00 | 100.00% | 0 | | 70,000.00 | 0.00% | 100.00% | 0.00 |
| Trash Enclosure - Concrete | 21,000.00 | 21,000.00 | 100.00% | 0 | | 21,000.00 | 0.00% | 100.00% | 0.00 |
| Footing and SOG reinforcement | 31,500.00 | 31,500.00 | 100.00% | 0 | | 31,500.00 | 0.00% | 100.00% | 0.00 |
| Structural Footings | 49,227.00 | 49,227.00 | 100.00% | 0 | | 49,227.00 | 0.00% | 100.00% | 0.00 |
| Concrete Slab on Grade | 56,788.70 | 56,788.70 | 100.00% | 0 | | 56,788.70 | 0.00% | 100.00% | 0.00 |
| CMU Wall | 33,000.00 | 16,500.00 | 50.00% | 0.5 | | 33,000.00 | 50.00% | 100.00% | 16,500.00 |
| 4"sidewalk Reinforced | 51,000.00 | 39,000.00 | 76.47% | ****** | | 509,987.25032 | 23.53% | 100.00% | 12,000.00 |
| Barrier & Mow Curb | 16,000.00 | 16,000.00 | 100.00% | 0 | | 16,000.00 | 0.00% | 100.00% | 0.00 |
| 4"Integral Color Sidewalk | 7,000.00 | | | 1 | | 7,000.00 | 100.00% | 100.00% | 7,000.00 |
| Change Order #1 Man gate deleted at the trash enclosures provide CMU Infills | 1,209.00 | 1,209.00 | 100.00% | 0 | | 1,209.00 | 0.00% | 100.00% | 0.00 |
| Change Order #2 ADA Ramp detail at Lincoln Area | 7,704.00 | 7,704.00 | 100.00% | 0 | | 7,704.00 | 0.00% | 100.00% | 0.00 |
| Change Order #3 Block Wall @ Lincoln | 5,000.00 | 5,000.00 | 100.00% | 0 | | 5,000.00 | 0.00% | 100.00% | 0.00 |
| Change Order #4 | 1,017.00 | | | 1 | | 1,017.00 | 100.00% | 100.00% | 1,017.00 |
| Subtotal | | | | | | | | | 36,517.00 |
| Amount of Retainage | | | | | | -10.00% | | | -3,651.70 |

| **Total** | USD 32,865.30 |
|-----------|---------------|
| **Payments/Credits** | USD -32,865.30 |
| **Balance Due** | USD 0.00 |



De La Fuente
Construction, Inc.

# Invoice

| Date | Invoice # |
|---|---|
| 11/25/2014 | 510 |

**PAID**
08/24/2015

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacrament, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| | P.O. No. | Terms | Project |
|---|---|---|---|
| | | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Saw cut, demo and haul concrete, excavate area for ADA Compliance. | 10,000.00 | | | | | 10,000.00 | 100.00% | 100.00% | 10,000.00 |
| Exclude: Asphalt Patch Back | | | | | | | | | |
| FOR ANY QUESTION PLEASE CONTACT LEO PEREZ @ (619) 719-2772 | | | | | | | | | |
| Subtotal | | | | | | | | | 10,000.00 |
| Amount of Retainage | | | | | | -10.00% | | | -1,000.00 |

| **Total** | USD 9,000.00 |
|---|---|
| **Payments/Credits** | USD -9,000.00 |
| **Balance Due** | USD 0.00 |

 De La Fuente
Construction, Inc.

# Invoice

| Date | Invoice # |
|---|---|
| 12/12/2014 | 508 |

**PAID**
**08/24/2015**

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacramento, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City, CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email: accounting@dlfci.com

| P.O. No. | Terms | Project |
|---|---|---|
| | | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|---|---|---|---|---|---|---|---|---|---|
| Repaired damaged concrete by landscapers and Play ground Contractors | | | | | | | | | |
| Saw cut at 3 locations playground area Set forms for mow curb @ pet ramp Demo playground & path of travel with jackhammer Pour sidewalk in playground area Pour Mow Curb | 1,794.00 | | | 24 | | 74.75 | 100.00% | 100.00% | 1,794.00 |
| Concrete, cu | 487.38 | | | 3 | | 162.46 | 100.00% | 100.00% | 487.38 |
| Rebar #3 20' | 18.63 | | | 20 | | 0.9315 | 100.00% | 100.00% | 18.63 |
| Subtotal | | | | | | | | | 2,300.01 |
| Amount of Retainage | | | | | | -10.00% | | | -230.00 |

| | |
|---|---|
| **Total** | USD 2,070.01 |
| **Payments/Credits** | USD -2,070.01 |
| **Balance Due** | USD 0.00 |

 **De La Fuente Construction, Inc.**

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/24/2015 | 548 |

**Bill To**

KOO Construction, Inc.
Attention: Accounts Payable
2510 Boatman Ave
West Sacrament, CA 95691

De la Fuente Construction, Inc

121 E 31st Street Suite C
National City. CA 91950
Ph. 619.512.5505
Fax. 619.878.2980
Email:  accounting@dlfci.com

| P.O. No. | Terms | Project |
|----------|-------|---------|
|          |       | 14003 CDC Murphy ... |

| Description | Est Amt | Prior Amt | Prior % | Qty | U/M | Rate | Curr % | Total % | Amount |
|-------------|---------|-----------|---------|-----|-----|------|--------|---------|--------|
| Change Order #6 Damaged Concrete | 16,154.00 | | | | | 16,154.00 | 100.00% | 100.00% | 16,154.00 |
| Amount of Retainage | | | | | | -10.00% | | | -1,615.40 |

| | |
|---|---|
| **Total** | USD 14,538.60 |
| **Payments/Credits** | USD -3,373.42 |
| **Balance Due** | USD 11,165.18 |